# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JAMES R. THOMAS and LINDA S. THOMAS,

    Plaintiffs,

v.                                  Case No.   3:14-cv-172-J-32PDB

CITY OF PALM COAST, et al.,

    Defendants.

## O R D E R

Pro se Plaintiffs James and Linda Thomas allege Defendants, the City of Palm Coast and eight of its employees, committed various violations of 42 U.S.C. § 1983 and state law in their code enforcement efforts against the Thomases. (Doc. 37). Plaintiffs moved for leave to amend their Complaint, (Doc. 32), and the Magistrate Judge granted that relief but cautioned Plaintiffs that their Complaint was a "shotgun pleading." (Doc. 36). Plaintiffs filed their Amended Complaint,[1] (Doc. 37), Defendants moved to dismiss, (Doc. 40), and Plaintiffs responded, (Doc. 51). Plaintiffs later moved to supplement that response, (Doc. 62), Defendants responded in opposition, (Doc. 63), and Plaintiffs replied, (Doc. 67).

---

[1] Plaintiffs' Amended Complaint (Doc. 37) is titled "Second Amended Complaint" but is the only amended complaint of record (an earlier proposed amended complaint was not filed- see Doc. 32, Ex. 1 and Doc. 36).

**I. FACTS**

Before delving into the events that form the basis for Plaintiffs' claims, a brief summary of the City's hierarchy is helpful.[2] Defendant Jim Landon is the City Manager and was responsible for the training and supervision of all other individual Defendants. (Doc. 37 at 17). Defendant Nestor Abreu, the City's Director of Community Development, supervises Defendant Barbara Grossman, the Code Enforcement Manager. (Id. at 10). Grossman supervises the Code Enforcement Supervisors, including Defendants Debra Chaudoin and Michael Donovan. (Id. at 11). The Code Enforcement Supervisors are responsible for the training and supervision of Animal Control Officers and Code Enforcement Officers, including Defendant Animal Control Officers Shelly Adorante and Eva Boivin, and Defendant Code Enforcement Officer Michael Hadden. (Id. at 17).

On February 25, 2010, Adorante responded to a call regarding two dogs locked inside a vehicle in the Thomases' driveway. (Id. at 5). The dogs were not in distress, as the vehicle was in the shade and the windows were partially down. (Id. at 5, 6). Adorante left an "Animal Control Courtesy Notice" and, after looking through the Thomases' living room window and seeing more dogs inside, called Linda Thomas. (Id. at 5-6). Upon learning that Adorante had looked in her living room window, Thomas became "totally irate" and complained of constitutional violations. (Id. at 6-7). The phone call ended and, after approximately an hour and a half wherein Thomas did not

---

[2] As this case is before the Court on a motion to dismiss, all facts alleged in the Amended Complaint are accepted as true for the purposes of this Order. Doe v. Wooten, 747 F.3d 1317, 1320 (11th Cir. 2014).

2

arrive at the property, Adorante wrote a Notice of Violation charging Linda Thomas with two counts of animal cruelty, with a fine of $100 for each dog. (Id. at 8).

Adorante ultimately stayed on the Thomases' property for a little over two hours, during which time she took photographs of the inside of the Thomases' home through the living room window and walked into the Thomases' side yard to look into their fenced back yard. (Id. at 7). In doing so, Adorante noticed a boat in their back yard and called Hadden to have him write a citation. (Id. at 7, 8). As the boat was not visible from a public place, Hadden went on the Thomases' property to view the boat. (Id. at 9). At some point, Adorante and Hadden were joined by Boivin, who likewise walked on the Thomases' property to observe the boat. (Id.). The Thomases had two other boats on the property, barely visible from the street, and Hadden photographed them as well. (Id.). Eventually, Hadden wrote a warning notice for the three boats. (Id.).

On March 2, 2010, Hadden returned to the Thomases' property and noted that the two boats visible to the public were gone, but went on the Thomases' property to observe the third boat, which remained. (Id.). A couple of days later, the Thomases met with Abreu to complain about the entries onto their land. (Id. at 10). Abreu showed no concern, and referred them to Grossman. (Id.). On March 10, 2010, Hadden again went on the Thomases' property to see the boat, which was still on the property. (Id.). Two days later, Linda Thomas met with Grossman to complain. (Id. at 10-11). Grossman advised her that she could have a hearing on the matter. (Id. at 11).

On four more occasions, Hadden walked on the Thomases' land to see the boat. (Id. at 11-12). On the last of these trips, Hadden's seventh to the property, the Thomases returned home to see Hadden on their neighbor's property, taking pictures of the Thomases' backyard. (Id. at 12). Hadden then walked on the Thomases' property, despite their protests. (Id.). In an e-mail about the incident on which he copied Grossman, Hadden said "it could not have worked out better" and said that the Thomases "went ballistic and became verbally abusive." (Id. at 43). Grossman responded by forwarding the e-mail to Donovan, Chaudoin, Boivin, Adorante, Abreu, and Carol Hickey, advising them that they need to be careful and request a deputy if they have any issues at the Thomases' property. (Id.).

The Thomases requested hearings for both the boat and animal cruelty citations. (Id. at 13). The Code Enforcement Board ruled in favor of the City on the boat citation on May 5, 2010. (Id.). The Thomases appealed, and the state court reversed and remanded the case. (Id.). The City dismissed the case on October 8, 2012. (Id. at 14). Likewise, the Code Enforcement Board ruled in favor of the City with respect to the animal control citation. (Id. at 16). The Thomases appealed, and the state court reversed on June 22, 2012. (Id.).

II.  **LAW**

   **A.  Claims against the City and Defendants in Their Official Capacities**

A number of counts are brought against the City and other Defendants in both their official and individual capacities. Suits against a municipality and against a municipal officer in his or her official capacity are functionally equivalent, and

4

therefore there is no need to name both the City and any City employee in his or her official capacity. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Counts One, Two, Three and Seven through Thirteen are therefore dismissed with prejudice to the extent they are brought against any individual Defendant in his or her official capacity.[3] These claims may be repleaded against the City except as otherwise stated below.

### B. The Federal Claims

Plaintiffs have brought claims in Counts One and Two under 42 U.S.C. § 1983 for violations of their Fourth Amendment rights as incorporated through the Fourteenth Amendment. (Doc. 37 at 18, 19). Both counts incorporate the same paragraphs from the factual basis and are brought against all Defendants. (Id.).

Counts Three through Six deal with the failure to train, supervise and discipline employees, also in violation of 42 U.S.C. § 1983. (Id. at 21-28). Count Three brings claims against the City, as well as against Landon in his official and individual capacities. (Id. at 21). Count Four is brought against Abreu, Count Five against Grossman, and Count Six against Chaudoin and Donovan, each in their official and individual capacities. (Id. at 23-28). Each of Counts Three through Six explains why

---

[3] Counts Seven through Eleven and Thirteen are brought against "All Defendants" which includes both the City and all Defendants in their official capacities. Count Three is against the City and Landon in both his official and individual capacities. Counts One, Two, and Twelve list the City and certain individual Defendants without specifying that they are only brought against the individual Defendants in their individual capacities.

5

Plaintiffs believe a certain Defendant can be held liable under the same statute (§ 1983) for the same constitutional violations laid out in Count One.

In all, it appears that Counts Two through Six are elaboration upon the claim made in Count One, rather than separate claims for relief. As such, they are dismissed without prejudice. Plaintiffs may re-file the claims if they can explain how they differ from Count One, may choose instead to include the additional factual allegations in Counts Two through Six in an amended Count One, or may choose to separate Count One into different counts for different groups of Defendants (but as noted above, Plaintiffs may not bring any claim against a Defendant in his or her official capacity if the same claim is brought against the City). As Plaintiffs must re-plead their federal claim, the Court will wait to rule on Defendants' arguments that Plaintiffs have failed to sufficiently allege a municipal policy or custom and that individual Defendants are entitled to qualified immunity.

### C.   The State Claims

Plaintiffs assert a variety of state law claims against all Defendants: negligence (Count Seven), intentional infliction of emotional distress (Count Eight), negligent infliction of emotional distress (Count Nine), governmental intrusion on the Plaintiffs' right of privacy and into the personal lives of the Plaintiffs (Count Ten), invasion of privacy (Count Eleven), and malicious prosecution (Count Thirteen). (Id. at 30-34, 36).[4] Plaintiffs also assert claims against specific Defendants: Count Twelve alleges

---

[4] While Defendants have not moved for dismissal as to any particular Defendant in any count, Plaintiffs should consider in drafting their Second Amended Complaint whether each count is appropriate as to each Defendant in their individual

6

negligent training and supervision against the City, Landon, Abreu, Grossman, Chaudoin, and Donovan, (Id. at 35); Count Fourteen claims defamation per se against Adorante, (Id. at 38); Counts Fifteen through Seventeen allege trespass against Adorante, Boivin, and Hadden, respectively, (Id. at 39-40).

### 1. The Negligence Claims

Plaintiffs bring three claims for negligent behavior, each incorporating all 100 predicate factual allegations. (Id. at 30-31, 32, 35-36). Count Seven alleges all Defendants were negligent, Count Nine alleges all Defendants negligently inflicted emotional distress on Plaintiffs, and Count Twelve alleges the City, Landon, Abreu, Grossman, Chaudoin, and Donovan committed negligent training and supervision. (Id.).

In Count Seven, Plaintiffs only generally list the elements of a negligence claim, without providing any information about what alleged misconduct forms the basis of the claim. (Id. at 30-31). To the extent the Court can determine what misconduct underlies Plaintiffs' claim for negligence, the claim is redundant to Plaintiffs' claim for negligent training and supervision. As such, Count Seven is dismissed without prejudice.

Count Nine similarly fails to state what misconduct forms the basis for the claim, instead simply incorporating all factual allegations against all Defendants and generally alleging the elements of a claim for negligent infliction of emotional distress. (Id. at 32). In any event, as pled, the claim is barred by the impact rule. Florida's

---

capacity.

7

impact rule prohibits a claim for emotional damages unless the plaintiff has either sustained a physical impact or his emotional distress has manifested itself in the form of a physical injury and certain other requirements are met. <u>Willis v. Gami Golden Glades, LLC</u>, 967 So. 2d 846, 850 (Fla. 2007).[5] As Plaintiffs have neither pled a physical impact nor a physical manifestation of any emotional distress, they cannot bring a claim for negligent infliction of emotional distress. Count Nine is dismissed without prejudice.

Plaintiffs' Count Twelve alleges both negligent training and supervision. (Doc. 37 at 35). While the two torts are similar, they are distinct causes of action. <u>Adler v. WestJet Airlines, Ltd.</u>, 31 F. Supp. 3d 1381, 1387 (S.D. Fla. 2014). Accordingly, Count Twelve is dismissed without prejudice to re-filing a claim that makes clear both the tort Plaintiffs allege has been committed and the basis for that claim.

### 2. Count Eight: Intentional Infliction of Emotional Distress

Count Eight alleges that all Defendants intentionally inflicted emotional distress on Plaintiffs. (Doc. 37 at 31-32). The City asserts that it has sovereign immunity from claims for intentional infliction of emotional distress. (Doc. 40 at 15). Florida municipalities cannot be held liable for acts an employee "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a) (2014). Because the reckless conduct required to establish a claim for intentional infliction of emotional

---

[5] While there are certain other exceptions to the impact rule, Plaintiffs do not argue that any exception applies, instead arguing only that Plaintiffs were involved in the incident. (Doc. 51 at 23).

8

distress is the equivalent of willful and wanton conduct, sovereign immunity protects Florida municipalities from claims for intentional infliction of emotional distress. Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1330 (11th Cir. 2015). Count Eight is therefore dismissed with prejudice as against the City.[6]

Individual Defendants move to dismiss Count Eight for failure to state a claim. To allege a claim for intentional infliction of emotional distress, a plaintiff must, amongst other elements, allege that the defendants engaged in outrageous behavior. Williams v. City of Minneola, 575 So. 2d 683, 691 (Fla. 5th DCA 1991). Behavior is only outrageous where it is so extreme, so atrocious, and so beyond all bounds of decency, that it is utterly intolerable in a civilized community. Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594-95 (Fla. 2d DCA 2007). Whether conduct is outrageous is a question of law. Jenks v. Naples Cmty. Hosp., Inc., 829 F. Supp. 2d 1235, 1256-57 (M.D. Fla. 2011).

Maliciously issuing repeated code enforcement violations against a property is not sufficiently outrageous to form a claim for intentional infliction of emotional distress. Callaway v. Hernandez, No. 207-CV-132-FTM-29SPC, 2010 WL 1249936, at *10 (M.D. Fla. Mar. 25, 2010). Nor does an unlawful intrusion by a police officer into a plaintiff's home form the basis for a claim, even where the officer also falsely arrests the plaintiff. Frias v. Demings, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) (granting

---

[6] The City's sovereign immunity bars claims against the Defendants sued in their official capacities too. Keck v. Eminisor, 104 So. 3d 359, 369 (Fla. 2012).

9

summary judgment for the defendant on an intentional infliction of emotional distress claim while denying summary judgment on a § 1983 claim for warrantless entry).

Given the scattershot nature of Count Eight, which incorporates all factual allegations and is brought against all Defendants, it is unclear what the basis is for the claim. (Doc. 37 at 31-32). Count Eight is due to be dismissed for that reason alone. However, even considering all of the allegations, none of the alleged misconduct is sufficiently outrageous to state a claim for intentional infliction of emotional distress. Count Eight is therefore dismissed with prejudice as to the individual Defendants.

### 3. Count Ten: Governmental Intrusion on the Right to Privacy

Count Ten alleges that all Defendants committed governmental intrusion on the Plaintiffs' right to privacy as laid out in the Florida Constitution article I, Section 23. (Doc. 37 at 33-34).[7] However, no cause of action exists for money damages under article I, Section 23. Hanney v. Garcia, No. 8:13-CV-2928-T-36MAP, 2015 WL 1277991, at *3 (M.D. Fla. Mar. 20, 2015); see also Holcy v. Flagler Cnty. Sheriff, No. 3:05-CV-1324J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) (holding that Florida constitutional provisions do not support claims for damages in the absence of an enabling statute). As such, Count Ten is dismissed with prejudice.

### 4. Count Eleven: Invasion of Privacy

Plaintiffs allege in Count Eleven that all Defendants invaded their privacy. (Doc. 37 at 34). Florida law recognizes the tort of invasion of privacy in three

---

[7] To the extent Plaintiffs' claims in Count Ten are for common law invasion of privacy, they are redundant of Count Eleven. (See Doc. 37 at 34).

circumstances including, as relevant here, the physical or electronic intrusion into one's private quarters. Oppenheim v. I.C. Sys., Inc., 695 F. Supp. 2d 1303, 1308 (M.D. Fla. 2010). A claim for intrusion, however, must allege the same kind of outrageous behavior as required for intentional infliction of emotional distress. Id.; see also Sprogis v. Suntrust Bank, No. 6:13-CV-365-ORL-37, 2013 WL 2456090, at *2 (M.D. Fla. June 6, 2013). Thus, Plaintiffs' claim for invasion of privacy fails for the same reason as their claim for intentional infliction of emotional distress, and is dismissed with prejudice.

### 5.  Count Thirteen: Malicious Prosecution

Count Thirteen, brought against all Defendants, alleges malicious prosecution. (Doc. 37 at 36). Malicious prosecution requires that a defendant have acted with malice. Olson v. Johnson, 961 So. 2d 356, 359 (Fla. 2d DCA 2007). As discussed above, Florida municipalities cannot be held liable for acts an employee committed with malicious purpose. § 768.28(9)(a). Accordingly, Plaintiffs' claim for malicious prosecution is dismissed with prejudice to the extent it is brought against the City. Weiland, 792 F.3d at 1330. It can be repleaded against the individual Defendants.

### 6.  Count Fourteen: Defamation Per Se

Count Fourteen alleges that Adorante committed defamation per se when she cited Linda Thomas with cruelty to animals. (Doc. 37 at 38). Public officials who make statements within the course and scope of their employment are absolutely immune from suit for defamation. Bates v. St. Lucie Cnty. Sheriff's Office, 31 So. 3d 210, 213 (Fla. 4th DCA 2010). This absolute privilege is available without regard to whether the speaker had an honest and reasonable belief in the veracity of the matter, nor is

11

it dependent on the absence of ill will. Cassell v. India, 964 So. 2d 190, 193-95 (Fla. 4th DCA 2007). The Amended Complaint alleges that Adorante was acting in the course and scope of her employment as an animal control officer when she cited Thomas for animal cruelty. (Doc. 37 at 3-4). Accordingly, Adorante is immune, and Count Fourteen is dismissed with prejudice as against Adorante in her individual capacity. Because Adorante is alleged to have acted with malice in issuing the citation, this claim is not available against Adorante in her official capacity. See Fl. Stat. § 768.28.

### 7.     Counts Fifteen, Sixteen, and Seventeen: Trespass to Land

Counts Fifteen, Sixteen and Seventeen allege claims for trespass to land against Adorante, Boivon and Hadden. Although the Amended Complaint does not state whether these claims are brought against these Defendants in their individual or official capacities, these claims cannot go forward against them in their official capacities because they are each alleged to have acted with malice (Doc. 37 at ¶¶ 243, 248, 252). See Fla. Stat. § 768.28. To the extent Plaintiffs are attempting to bring claims for trespass to land against these Defendants in their individual capacities, Counts Fifteen, Sixteen and Seventeen are adequately pled. See Pitts Sales, Inc. v. King World Prods., Inc., 383 F. Supp. 2d 1354, 1365 (S.D. Fla. 2005) (explaining that nominal damages may be recovered for trespass under Florida law where no actual damages are proven).

### 8.     Whether Adequate Notice was Provided

The City argues that each state law claim is barred insofar as it seeks relief from the City or the other Defendants in their official capacities because Plaintiffs

12

failed to comply with Florida's mandatory notice requirements. (Doc. 40 at 9-10). Before bringing suit against a municipality, Florida law requires claimants to present their claims in writing to the appropriate agency within 3 years from the time the claims accrue. § 768.28(6)(a). The Court has dismissed each state law claim against the City and the Defendants in their official capacities. The Court therefore need not address whether Plaintiffs provided the City with adequate notice. In the event Plaintiffs choose to replead any of the state law claims the Court is dismissing without prejudice, the City may renew the notice argument by motion or by affirmative defense, as appropriate. See Cabral v. City of Miami Beach, 76 So. 3d 324, 326-27 (Fla. 3d DCA 2011).

### D. Punitive Damages

The Amended Complaint asks for punitive damages against the City. (See, e.g., Id. at 19). As Plaintiffs admit, the City is immune from punitive damages. (Doc. 51). Accordingly, Plaintiffs may not seek punitive damages from the City in their Second Amended Complaint.

### E. Conclusion

Plaintiffs may well have some claims which deserve to go forward. However, Plaintiffs' current complaint tries to do too much and suffers from numerous deficiencies. Thus, the Court will dismiss it without prejudice in its entirety and will allow Plaintiffs to file a second amended complaint that addresses these deficiencies. Those claims that the Court has dismissed with prejudice may not be included in the second amended complaint.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 40) is **GRANTED** to the extent discussed above, but is otherwise **DENIED**. Plaintiffs have until **December 21, 2015** to file a second amended complaint. Defendants have until **January 21, 2016** to respond. If all or some of the Defendants move to dismiss the second amended complaint, Plaintiffs should respond no later than **February 16, 2016**. The Court will wait until the pleadings are settled to set dates for the remainder of this case.

2. Plaintiffs' Motion to Supplement (Doc. 62) is **DENIED**.

3. The Clerk shall reopen the file.

**DONE AND ORDERED** in Jacksonville, Florida the 23rd day of November, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

w/s.
Copies to:

Counsel of record
Pro se parties

14